**BRESNICK et al. v. U. S. VITAMIN CORPORATION.**

**Civ. 9—481.**

District Court, S. D. New York.
Dec. 4, 1942.

Solomon Silverstein, of New York City, (Thomas A. Hill, of New York City, of counsel), for plaintiffs.

Watson, Bristol, Johnson & Leavenworth, of New York City (Clair V. Johnson and Charles P. Bauer, both of New York City, of counsel), for defendant.

COXE, District Judge.

This is a suit for alleged infringement of the Bresnick patent, No. 2,007,108, issued July 2, 1935, for a medicinal preparation. The plaintiffs are assignees of the patent, but do not manufacture or sell the preparation. Their activities have been confined entirely to the granting of a few licenses. The defendant is a manufacturer of vitamin products, which are sold under the trade name "Vi-Syneral" in the form of capsules, and syrups.

The patent states that the "invention relates to the production of a new medicinal preparation containing fish-liver oils of high vitamin content in which the nauseous and objectionable odor and taste of these oils are effectively masked, and which preparation remains stable over a long period of time".

In the specification it is asserted that "it is possible to hide completely the taste and odor" of the fish-liver oils by mixing them with a hard vegetable fat, such as cocoa butter, and a suitable flavoring material, such as spices, barks and cocoa. The "final product in accordance with the invention" is stated to be "a solid in the nature of a confection". There is also a statement that lecithin "may be added", with or without the sweetening ingredients, to serve as a binder for the fish-liver oils and fats of different specific gravities, and to retard the hydrolysis of fats and prevent the formation of free fatty acids.

The patent gives as an illustrative example "a mixture of 35-40% vegetable fat such as cocoa butter, 15% flavoring, 40% sweetening and 10-5% fish-liver oils".

The patent has eight claims, but claim 5 is the only one in issue, reading as follows: "5. A substantially anhydrous edible medicinal preparation comprising an intimate mixture of an edible dehydrated hard vegetable fat, a fatty material having a high vitamin content subject to deterioration and lecithin, said mixture having a moisture content substantially no greater than one and one-half per cent of the mass".

The principal defenses are invalidity for anticipation and lack of invention, and noninfringement. It is also contended that the patent is invalid for failure to disclaim claim 3 after knowledge that the patentee was not the inventor or discoverer of the preparation covered by that claim.

The product called for by claim 5 is an "edible" preparation. This, according to the patent, is a preparation which is "highly palatable and capable of easy feeding to children"—one in which the odor and taste of the fish-liver oils "are effectively masked". Under the language of the claim, the first ingredient of the mixture is described as "a dehydrated hard vegetable fat". This means a vegetable fat

which is solid at ordinary room temperature, and Dr. Seil, an expert called by the plaintiffs, admitted that ordinary commercial cocoa butter was within the meaning of the term. The second ingredient called for by the claim is "a fatty material having a high vitamin content subject to deterioration". This term includes vitamins A and D, which are present in fish-liver oils and fish-liver oil concentrates; it is also broad enough to include vitamin E, which is present in wheat germ oil, one of the substances used by the defendant. The third ingredient of the claim is "lecithin", which is naturally present in wheat germ oil, cocoa butter, chocolate, olive oil, and various other substances. In the specification, lecithin is merely something which "may be added" in an amount of "about ½% of the finished mass", yet the language of the claim is broad enough to cover any amount of the material, whether naturally present or added. Finally, the claim calls for "a mixture having a moisture content substantially no greater than one and one-half percent of the mass".

The defendant's "Vi-Syneral" capsule (which alone is charged with being an infringement) comprises a sealed gelatin shell with a vitamin-containing fill. The fill is composed of vitamins A and D in the form of fish-liver oil concentrate, the elements of vitamin B complex in the form of yeast, vitamin C in the form of ascorbic acid, additional B1 in the form of thiamin chloride, additional B2 (G) in the form of riboflavin, and vitamin E in the form of wheat germ oil. The moisture content of the capsule, taken as a whole, is above 5%; that of the gelatin shell above 7.5%, and that of the fill above 3%.

Bresnick, the patentee, had no training or experience as a chemist, and his only knowledge of vitamins came from some rather indifferent and sporadic reading on the subject at the New York Public Library. Prior to 1931, he had been employed in his brother's chocolate candy business, his work there consisting of taking care of one of the candy stores and at times supervising the factory operations. There was a period also when he conducted a chocolate candy business of his own, and he professed to know "just exactly what chocolate looked like". In the fall of 1931 he had a sick child, and a physician gave him a small bottle of halibut liver oil or "haliver oil" with directions to "give the child a few drops on a spoon with juice or something like that". This prompted him to take an interest in vitamins, and he went to the Public Library to do some research on the subject. With the knowledge he acquired there he was able to produce "little chocolate tablets" by mixing halibut liver oil and chocolate, to which he added "peppermint and things like that * * * for flavors". These little tablets were later made with cod liver oil, and sold in small quantities between 1935 and 1937 "as a test". Bresnick knew almost nothing about lecithin, yet he had a faint recollection that he used the substance in a batch of chocolate he sent to Parke-Davis & Company in 1932. He said that he used the lecithin at that time "sort of to help me stabilize it, to do the best job I could, and I did not think very much about it".

1. There was no invention in the product of claim 5. It was common practice before Bresnick to use chocolate as a base to mask the odor and taste of oils in confections (See Scoville, Art of Compounding, 1911). It has been shown, also, that Page & Shaw, Inc., candy manufacturers, produced and sold in 1921 and 1922 large quantities of a vitamin chocolate bar which meets all the requirements of claim 5. The composition of this vitamin chocolate bar is fully explained in a booklet published by Page & Shaw in 1921, and distributed to the public in large numbers shortly thereafter. In this booklet the approximate analysis of the product is given as 12% concentrated materials carrying vitamins A, B and C; cocoa and vanilla flavoring 15½%; cane sugar 42%; and cocoa butter 32%. This corresponds almost exactly with Bresnick's typical example. The plaintiffs have conceded that the Page & Shaw mixture contains less than 1½% of moisture. There is no dispute, either, that lecithin is naturally present in cocoa butter and chocolate.

If claim 5 is construed literally to include lecithin in any form, it is clearly anticipated by the Page & Shaw prior use. If, however, the claim is construed to include added lecithin as distinguished from lecithin naturally present in some of the ingredients, (which I think is the correct construction) it is still invalid for lack of invention.

It was old to add lecithin to chocolate to prevent deterioration or "graying". This was disclosed not only in the Working patent No. 1,781,672 (1930), but in the Avent article in the Manufacturing Con-

fectioner of February 1930 and the Morgan article in Food Manufacture of March 1930. Moreover, the Weiss British patent No. 418 (1910) shows a mixture of cod liver oil and lecithin; it also refers to an earlier Szigeti British patent No. 3301 (1907) covering a preparation containing "lecithin and several other substances as a mixture in the form of a paste or hard chocolate".

2. The patent is also invalid for failure seasonably to disclaim claim No. 3. This claim is identical in its phraseology with claim 5 except that it omits the words "and lecithin". In 1937, Bresnick obtained a British patent, No. 463,655, corresponding to the patent now in suit, which specifically admitted that mixtures of cod liver oil, cocoa butter and chocolate were old. Moreover, in October 1941, the plaintiffs admitted the Page & Shaw *prior use in 1921 and 1922, already referred to, which certainly meets all of the requirements of claim 3. It thus appears that the plaintiffs have long since known that Bresnick was not the "original or first inventor or discoverer" of the product claimed in claim 3, yet there has been no disclaimer of that claim. This failure to disclaim claim 3 invalidates the entire patent. Ensten v. Simon Ascher & Co., 282 U.S. 445, 51 S.Ct. 207, 75 L.Ed. 453.

3. With respect to infringement, I can see no similarity between the product of the patent and the defendant's capsulated product. The defendant's capsule is not "edible" in the sense that the term is used in claim 5. Neither does it contain a "dehydrated hard vegetable fat" such as ordinary commercial cocoa butter. The most that Dr. Seil, plaintiffs' expert, asserted with respect to the capsule was that it contained "solid fatty acid, the glycerides of which would be solid at room temperature". This does not satisfy the requirements of the claim. Moreover, the defendant does not add lecithin as an ingredient. I think this is implicit in the language of claim 5. The only lecithin in the capsule is naturally present in the wheat germ oil, which is used mainly because it contains vitamin E. Finally, the defendant's product (exclusive of the gelatin capsule) has a moisture content of more than 3%, which is substantially higher than the 1½% moisture content called for by the claim. I hold, therefore, that even if claim 5 were valid, the defendant would not infringe.

There may be a decree for the defendant, holding claim 5 of the Bresnick patent No. 2,007,108 invalid for anticipation and lack of invention; holding the entire patent invalid for failure seasonably to disclaim claim 3; holding claim 5 not infringed; and dismissing the complaint on the merits, with costs.